J-S22024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: W.S., JR., A MINOR      :   IN THE SUPERIOR COURT OF
          :        PENNSYLVANIA
          :
APPEAL OF: J.R., MOTHER     :
          :
          :
          :
          :
          :
          :   No. 2062 MDA 2019

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00750

IN RE: N.S., A MINOR        :   IN THE SUPERIOR COURT OF
          :        PENNSYLVANIA
          :
APPEAL OF: J.R., MOTHER     :
          :
          :
          :
          :
          :
          :   No. 2063 MDA 2019

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00751

IN RE: T.S., A MINOR        :   IN THE SUPERIOR COURT OF
          :        PENNSYLVANIA
          :
APPEAL OF: J.R., MOTHER     :
          :
          :
          :
          :
          :
          :   No. 2065 MDA 2019

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00752

IN RE: F.S., A MINOR     :  IN THE SUPERIOR COURT OF
              :     PENNSYLVANIA
              :
APPEAL OF: J.R., MOTHER    :
              :
              :
              :
              :
              :
              :  No. 2066 MDA 2019

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00753

BEFORE:  OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:    **FILED: JUNE 22, 2020**

  J.R. (Mother) appeals from the decrees involuntarily terminating her parental rights to her four children, W.S., Jr., a male (born in November 2008), N.S., a female (born in November 2011), T.S., a male (born in January 2014), and F.S., a female (born in April 2015) (collectively, Children). Upon careful review, we affirm.

  Lancaster County Children and Youth Service Agency (Agency) first became involved with this family in 2013, due to domestic violence in the home and Mother's struggle with depression. Orphans' Court Opinion, 11/21/19, at 2. The Agency created a safety plan and maintained an open file with this family until January of 2016. ***Id.***

---

[*] Retired Senior Judge assigned to the Superior Court.

On June 7, 2016, Mother voluntarily placed the Children in the Agency's custody because "she was severely depressed, had been abusing Percocet, and felt overwhelmed in caring for the [C]hildren." *Id.* On June 8, 2016, the orphans' court formally placed the Children in the temporary custody of the Agency.[1] The Agency placed W.S., Jr., and N.S. together in one foster home, and T.S. and F.S. together in a different foster home. *Id.* at 2. At the time of the subject proceeding, the Children remained in their respective foster homes, which "are potentially permanent placements for the Children." *Id.*

The orphans' court adjudicated the Children dependent on June 20, 2016. *Id.* The court set the Children's permanency goal as reunification with the concurrent goal of adoption. Mother was required to satisfy the following family service plan objectives: improve mental health functioning; remain free from the abuse of drugs and alcohol, crime, and domestic violence; improve parenting skills; and maintain a safe home for the Children. *Id.* at 3.

The orphans' court held permanency review hearings at regular intervals. From June through November 2016, Mother struggled with drug addiction, for which she received inpatient treatment in July and November

---

[1] At the time of the Children's placement, W.A.S., Sr., (Father) was incarcerated at State Correctional Institution - Retreat for committing aggravated assault against Mother. Orphans' Court Opinion, 11/21/19, at 2. Father remained in prison until April 1, 2018. *Id.* at 5. As best we can discern, Father was re-incarcerated for a parole violation from August 7, 2019, to August 22, 2019. N.T., 9/23/19, at 17.

2016. *Id.* at 3-4. On November 17, 2016, Mother was unsuccessfully discharged from an inpatient drug rehabilitation program at White Deer Run. *Id.* at 4. By August 2017, Mother had entered into a romantic relationship with a man who had a history of being abusive. *Id.* at 5.

On March 5, 2018, the court found that Mother was in substantial compliance with her permanency plan. As a result, the court ordered that the Agency "could present a written petition requesting the Children to be released from its physical custody and returned to Mother."[2] *Id.* Following this hearing, the Children continued visiting Mother in her home on a weekly basis.

At the next permanency hearing in August 2018, the court ordered that Mother's visitation with the Children be supervised in her home once per week without her paramour present. *Id.* at 6. In addition, the court ordered Mother and her paramour to participate in couple's counseling. *Id.* However, at the permanency hearing on February 4, 2019, the court found that Mother had been the victim of domestic violence by both her paramour and Father during the most recent six-month review period. *Id.* at 6-7. Specifically, the court

---

[2] There is no evidence in the certified record before this Court whether the Agency filed the petition requested by the orphans' court.

found, "At least four incidences of domestic violence had occurred between Mother and her paramour."[3] *Id.*

On April 1, 2019, the Agency filed a petition for the involuntary termination Mother's and Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing occurred on September 23, 2019, and October 28, 2019, during which Mother and Father were present and represented by separate counsel. Elizabeth A. Stineman, Esquire, the guardian *ad litem* (GAL), represented the best interests of the Children. Pamela J. Breneman, Esquire, represented the legal interests of the older children, W.S., Jr., and N.S.[4, 5]

---

[3] The court found that criminal charges were filed against Mother's paramour due to his physical abuse of Mother, and Mother filed a protection from abuse action against him. Orphans' Court Opinion, 11/21/19, at 6.

[4] Pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for his or her legal interests, which our Supreme Court has defined as the child's preferred outcome. *See In re T.S.*, 192 A.3d 1080 (Pa. 2018) (citing *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017)). The *T.S.* Court reaffirmed, "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-GAL representing the child's best interests can also fulfill the role of the attorney appointed per Section 2313(a) to represent the child's legal interests." *T.S.*, 192 A.3d at 1088 (citing *L.B.M.*, 161 A.3d at 184, 188-189, 191). In this case, the record does not indicate that a conflict existed between the legal and best interests of the younger children, T.S. and F.S.

[5] Both the GAL and legal counsel for W.S., Jr., and N.S. filed appellee briefs in support of the decrees involuntarily terminating Mother's parental rights.

The Agency presented the testimony of its caseworker, Kelsey Curcio.[6] The court admitted into evidence a bonding evaluation performed by Karen M. Jaskot, ACSW, LCSW, CAADC, dated August 6 and 13, 2019, with respect to the Children's bond, if any, with Mother, Father, and their respective foster parents. *See* N.T., 10/28/19, at 6. The parties stipulated that, if Ms. Jaskot testified, she would opine consistent with her report. *Id.* at 5-6. Mother neither testified nor presented any evidence.

By decrees dated November 21, 2019, and entered on December 2, 2019, the orphans' court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On December 19, 2019, Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.[7] The orphans' court filed its Rule 1925(a) opinion on January 17, 2019.

On appeal, Mother presents the following issue:

Whether the [orphans'] [c]ourt abused its discretion when it failed to adequately consider Mother's domestic abuse history, ongoing struggles with substance abuse issues, and past successes working with the Agency, as factors which would have allowed Mother additional time to work on her family service plan and, thus[,] remedy the condition for placement[?]

---

[6] In addition, the Agency presented the testimony of Heather Lutz, Father's probation and parole officer.

[7] Father also timely appealed from the decrees involuntarily terminating his parental rights to the Children. We address Father's appeal by separate memorandum.

Mother's brief at 1 (unpaginated).

Our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decrees pursuant to Section 2511(a)(2) and (b),[8] which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> *       *       *

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> *       *       *

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2) and (b).

---

[8] Based on this disposition, we need not consider the involuntary termination decrees pursuant to Section 2511(a)(1), (5), and (8).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate parental rights pursuant to Section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. **See In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **In re A.L.D.** 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. **Id.** Further, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. **Id.** at 337.

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284,

1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

On appeal, Mother argues that the court "should have allowed [her] additional time to complete her [family service] plan given the fact that her temporary relapses were caused by acts of domestic abuse perpetrated by her new paramour. Moreover, by March of 2018, Mother had demonstrated to the court that she was capable of success and compliance with her plan, and, in essence, had completed her plan." Mother's brief at 7 (unpaginated).

We disagree and reject Mother's argument to the extent that she blames her incapacity to parent the Children on the domestic abuse inflicted by her paramour. Mother's argument is disingenuous because her relationship with her paramour commenced, as best we can discern, in 2017 when the Children were in placement. Mother knew the permanency objectives she needed to accomplish in order to be reunified with the Children including, but not limited to, being free from domestic violence situations.

Further, we discern no abuse of discretion in the explanation offered by

the orphans' court:

At present, Mother is only a few months sober from heroin use, admitted to being [physically] gripped by Father over the last review period, is not employed, is newly pregnant with the man who has repeatedly abused her, and is homeless. While Mother completed some goals on her service plan such as attending counseling and domestic violence treatment, Mother's inability to remain at a drug and alcohol rehab center longer than a few days, and her inability to maintain boundaries around the men who have beaten her shows that the very same concerns that necessitated original placement still remain. While the [c]ourt is sensitive to Mother's struggle against domestic violence, her lack of willingness to follow through with treatment and continued use of drugs has led to over three years of absence from [the] Children— creating an untenable situation for them. . . .

* * *

Over thirty-nine months, the [c]ourt has observed Mother's pattern of engaging in harmful relationships, depending on drugs, seeking treatment, and then remaining sober for a time until the vicious cycle starts over again. The [c]ourt firmly believes that the thirty-nine month sample of Mother's life that it has observed shows an incapacity to care for [the C]hildren that has not been remedied, nor can it be remedied in the immediate future such as to assure this court that [the] Children will be properly cared for. Therefore, the court is satisfied that the Agency proved by clear and convincing evidence that termination of Mother's parental rights is warranted pursuant to Section 2511(a)(2).

Orphans' Court Opinion, 1/17/19, at 10, 12. The testimonial evidence

supports the court's findings.

The Agency caseworker, Kelsey Curcio, testified that Mother, although

not recently drug tested, told her the week before the subject proceeding that

she has "been a few weeks clean from using" heroin. N.T., 9/23/19, at 13.

In addition, she testified that Mother was cited for public drunkenness on May

- 11 -

14, 2019. *Id.* Ms. Curcio stated, to the best of her knowledge, "there is a bench warrant out right now for [Mother] for failure to pay [her penalty from the citation]." *Id.*

Ms. Curcio testified that Mother "is not currently in any mental health" or drug and alcohol treatment. *Id.* at 12. She explained:

> We wanted to look into doing a dual diagnosis [program] because [Mother] wasn't successful with completing any inpatient services. I've encouraged her several times to get back [into] inpatient [treatment] . . . where she can also focus on her mental health, as well. I met with her a handful of times in the past few months; however, right now the only thing that she is . . . involved with [is] the Rase Project,[9] and I believe that worker is trying to get her involved in dual diagnosis treatment.

*Id.* Further, she testified that Mother "reported to me before court today that she was going to be getting back on the Vivitrol shot[,][10] and that she does stay in contact with the Rase Project worker. Other than that, she's not in any treatment." *Id.*

With respect to Mother's domestic violence objective, Ms. Curcio testified, "there has been ongoing physical abuse . . . or domestic violence between her and [Father]. [Mother] reported that he has gripped her up

---

[9] As best we can discern, the Rase Project is a nonprofit organization that provides support for those in drug recovery.

[10] The certified record does not describe the purpose or benefit of Vivitrol shots.

several times and strangled her on one occasion." *Id.* at 13-14. Ms. Curcio continued on direct examination:

> Q. Have you had discussions with [Mother] then about going to a shelter or taking other steps to ensure her safety?
>
> A. Yes, . . . we had it set up for her to enter a rehab, she thought she would be able to stay safe from him if she was, you know, out of Lancaster County at White Deer Run; however, she went there for a few days and then she left.

*Id.* at 14. On cross-examination by Mother's counsel, Ms. Curcio testified that White Deer Run offered Mother a dual diagnosis treatment program, and Mother was there from August 4, 2019 until August 9, 2019. *Id.* at 22. In addition, Mother returned to White Deer Run on August 29, 2019, but Ms. Curcio did not testify how long Mother remained then. By the time of the subject proceeding, Mother was not in any treatment program.

With respect to Mother's housing objective, Ms. Curcio testified that Mother called her on September 30, 2019 and informed her that she was pregnant, but she did not know if the child was that of Father or her paramour. N.T., 10/28/19, at 8. Further, Mother told her "that she was living on the streets and wanted me to find a shelter for her." *Id.* Ms. Curcio stated, "We were able to get a hold of Vantage House[,][11] and they were able to expedite

---

[11] Ms. Curcio testified that Vantage House was a shelter program that provided treatment services for mental health, drug and alcohol addiction, and domestic violence. N.T., 10/28/19, at 9.

the process for her. And she ended up going there on October 10[, 2019.]"

*Id.* at 8-9. She continued:

> Then on October 15th I received a call from Vantage [H]ouse, and they had informed me that [Mother] had left the program. I've since been able to talk to [Mother]. And she had told me that it was just too much for her[,] and she didn't want to talk about any of her trauma[,] and she didn't really trust any of the, I guess, therapists],] and she just didn't feel comfortable there[,] so she wanted to leave.
>
> Other than that[,] she's not in any . . . services at this point. And she's residing with her sister. . . .

*Id.* at 9.

Finally, Ms. Curcio testified that since June 28, 2019, Mother missed seven supervised visits with the Children, and she attended five. N.T., 9/23/19, at 15-16. She stated on direct examination:

> Q. And have you talked again with [Mother] about why she's been missing visitation?
>
> A. Yes, because of her ongoing drug use was some of the excuses for canceling visitation, her being homeless and not knowing or having any ride to visits. Also with the most recent incident between . . . [Mother] and [Father] and then also the incident between [Mother] and [her paramour].

*Id.* at 16.

Based on the foregoing, we discern no abuse of discretion by the orphans' court in concluding that Mother's conduct warranted the termination of her parental rights pursuant to Section 2511(a)(2). Mother's repeated and continued incapacity or refusal to satisfy her family service plan objectives has caused the Children to be without essential parental care, control, or

subsistence necessary for their physical and mental well-being. Further, the causes of Mother's incapacity or refusal cannot or will not be remedied. ***See In Re Adoption of C.L.G.***, 956 A.2d 999, 1007-08 (Pa. Super. 2008) (*en banc*) (stating, "a child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'") (citing ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008)).

Additionally, Mother waived any challenge to the decrees under Section 2511(b) by failing to raise any such challenge in her statement of questions presented in her brief and in her concise statements of errors complained of an appeal. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) (concluding that the appellant waived any challenge to Section 2511(b) by not including a claim in her statement of questions presented and in her concise statements).

Even if Mother had not waived her challenge to Section 2511(b), we would conclude that the expert bonding evaluation admitted into evidence supports the court's decision that terminating Mother's parental rights serves the developmental, physical, and emotional well-being of the Children. ***See*** Petitioner's Exhibit 3. In addition, the court's decision is supported by the recommendation of the GAL and legal counsel for the older children, W.S., Jr., and N.S., wherein they indicated that the Children desired adoption. N.T., 10/28/19, at 25-26. Accordingly, we affirm the decrees involuntarily

terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/22/2020